■ JEFFREY P. FOGELSON et al., Respondents, v HOME INSURANCE COMPANY, Appellant, and AMERICAN HOME ASSURANCE COMPANY, Respondent.—Order and judgment (one paper), Supreme Court, New York County (Seymour Schwartz, J.), entered January 29, 1986, which granted plaintiffs' motion for summary judgment declaring that defendant The Home Insurance Company (The Home) is obligated to defend and indemnify plaintiffs in a malpractice action, and which denied The Home's motion for summary judgment against defendant American Home Assurance Company (American Home), modified, on the law, to declare that The Home is not obligated to defend or indemnify plaintiffs, and otherwise affirmed, without costs.

The individual plaintiffs in this declaratory judgment action are the partners of the plaintiff law firm who, while members of a predecessor law firm, represented James and Elizabeth Farrell in a mortgage foreclosure action in 1980. Plaintiffs

admit their failure to file a timely answer in that action, and their unsuccessful efforts over the next four years to vacate a default judgment entered against the Farrells.

American Home had issued to plaintiffs a one-year "claims made" professional liability policy effective October 5, 1983. Plaintiffs used Country Brokerage Service, Inc. as their broker to obtain this insurance. Upon the expiration of American Home's policy, The Home issued to plaintiffs a one-year "claims made" professional liability policy effective October 5, 1984, which was cobrokered by Country Brokerage and Bertholon-Rowland Corp.

On April 30, 1984, while plaintiffs were insured by American Home, the Farrells informed plaintiffs that they had been advised by an unnamed attorney to consider the possibility of instituting a malpractice action against the plaintiffs. Plaintiffs advised Bertholon-Rowland by letter of this communication from the Farrells in the mistaken belief that Bertholon-Rowland was their broker on the American Home policy. The record does not indicate that Bertholon-Rowland forwarded plaintiffs' letter to American Home or otherwise advised American Home of the substance of the letter.

The application for professional liability insurance that plaintiffs submitted to The Home on October 5, 1984 contained the following limitation on coverage appearing in bold-faced print: "This policy does not apply to any claim arising out of any acts or omissions occurring prior to the effective date of this policy if the Insured at the effective date knew or could have reasonably foreseen that such acts or omissions might be expected to be the basis of a claim or suit. Potential claims that you are presently aware of should be reported to your present carrier."

To similar effect, and as here pertinent, the policy indemnified the insured (plaintiffs) for damages the insured became legally obligated to pay as the result of claims first made against the insured during the policy period by reason of any act, error or omission in professional services rendered:

"PROVIDED ALWAYS THAT such act, error or omission * * * happens:

"(aa) during the policy period, or

"(bb) prior to the policy period, provided that prior to the effective date of this policy:

"1) the insured did not give notice to any prior insurer of any such act, error, omission or personal injury; and

"2) the insured had no basis to believe that the insured had

breached a professional duty or committed a personal injury; and

"3) there is no prior policy or policies which provide insurance for such liability or claim, unless the available limits of liability of such prior policy or policies are insufficient to pay any liability or claim in which event this policy will be excess over any such prior coverage."

On December 20, 1984, the Farrells notified plaintiffs of their definite intention to institute a malpractice action, and, on February 7, 1985, such an action was commenced. The Home declined coverage on the ground of plaintiffs having first been advised of the possibility of a malpractice action against them on April 30, 1984, prior to the inception of The Home's policy, taking the position that on that basis the claim was not "first made against the insured during the policy period," and further based its declining coverage on "such other good and sufficient reasons as may hereafter appear."

American Home disclaimed coverage because the Farrells' claim was not first made within its policy period, and further because even if the claim was made within the policy period, proper notice to American Home was not given. Plaintiffs then commenced the within declaratory judgment action to determine which company was liable to defend and indemnify them against the Farrells' malpractice lawsuit.

Prior to any disclosure in this action, plaintiffs moved for summary judgment against The Home and sought a declaration that it was obligated to defend and indemnify them in the underlying professional malpractice action, and The Home moved for summary judgment against defendant American Home declaring that it was obligated to defend and indemnify plaintiffs in the underlying Farrell suit. Special Term ruled that The Home was obligated to defend and indemnify, and denied The Home's motion for summary judgment against American Home. This appeal by The Home followed.

We need not determine whether the claim was first made on April 30, 1984 (when plaintiffs were advised of the possibility of a malpractice action), or on December 20, 1984 (when plaintiffs were notified that a malpractice action was about to be commenced), or on February 7, 1985 (when the action was actually commenced). It is clear that under coverage clause (bb) (2) of The Home policy the plaintiffs did have a basis to believe they had breached a professional duty prior to the effective date of The Home policy.

Plaintiffs contend that The Home is precluded from assert-

ing the aforesaid coverage provision as a defense to plaintiffs' demand for coverage, on the ground that The Home's failure to specifically enumerate any defenses in its January 30, 1985 disclaimer letter beyond the timing of the Farrells' claim operated as a waiver of all further defenses. However, the doctrine of waiver cannot expand an insuring clause or contract the exceptions to such clause, but is instead limited in its application to those circumstances where the insurer's conduct demonstrates an intention to abandon such defenses as failure to cooperative or give timely notice of claim. The distinction is clearly set forth in *Schiff Assocs. v Flack* (51 NY2d 692, 698) as follows: "Waiver evolved because of courts' disfavor of forfeitures of the insured's coverage which would otherwise result where an insured breached a policy condition, as, for instance, failure to give timely notice of a loss or failure to co-operate with the insured (16A Appleman, Insurance Law and Practice, § 9082). To defeat the forfeiture, courts find waiver where there is direct or circumstantial proof that the insurer intended to abandon the defense * * * This, however, does not create coverage, for the underlying coverage must be subsisting if the forfeiture is to serve any purpose. So, where the issue is the existence or nonexistence of coverage (e.g., the insuring clause and exclusions), the doctrine of waiver is simply inapplicable [citations omitted]." We accordingly conclude that The Home is not obligated to defend or indemnify plaintiffs in the malpractice action instituted by the Farrells on February 7, 1985, and summary judgment should be granted to The Home declaring to that effect.

We so hold with a caveat to the Bar inasmuch as it would appear that if an attorney were covered by successive "claims made" policies with different insurers, each containing the particular provisions in The Home's policy, the attorney might be unprotected in many commonly arising situations. For instance, if the attorney defaulted in answering a complaint in 1984, but a claim were not made against him until 1985, the 1984 insurer could disclaim coverage because the claim was not " 'first made against the insured during the policy period' " *(Heen & Flint Assocs. v Travelers Indemn. Co.,* 93 Misc 2d 1, 4). And the 1985 insurer could disclaim coverage because the policy only indemnifies for acts, errors or omissions prior to the policy period if, prior to the effective date of the policy, "the insured had no basis to believe that the insured had breached a professional duty". The coverage afforded under "claims made" policies may thus be, in many cases, largely illusory.

Nevertheless, on the undisputed facts presented in the instant case, The Home did not have to issue any policy at all to the plaintiffs, and had the right in the policy it did issue to exclude coverage for acts committed prior to October 5, 1984, where plaintiffs clearly had a basis to believe that in 1980 they had breached a professional duty which might reasonably be foreseen to be the basis of a claim or suit. In a similar context, one Federal District Court made the following observations which are here pertinent: "[W]e are of the firm opinion that the freedom to offer malpractice insurance contracts similar to the one before us serves the public interest * * * Moreover, the requirement of retroactive coverage, for a 'claims made' policy to be valid, would likely be an invitation to fraud. It would enable the insured to obtain coverage for past negligent conduct known to him but unknown to the insurer. Indeed, it would be literally impossible in many cases for the insurer to protect itself when extending insurance to applicants who wished to purchase coverage while concealing past acts which the applicant knew, or had reason to believe, might lead to a claim. The hazard of fraud upon the insurer increases in direct proportion to the length of the period of retroactivity." *(Brander v Nabors,* 443 F Supp 764, 773 [ND, Miss], *affd* 579 F2d 888 [5th Cir 1978].)

The record and facts are not sufficiently clear to warrant a summary determination as to American Home's obligations to defend and indemnify plaintiffs, and accordingly that portion of Special Term's order denying The Home's motion for summary judgment against American Home is affirmed. Concur—Sandler, J. P., Asch and Rosenberger, JJ.

Ross, J., concurs in a separate memorandum as follows: Based upon my review of the record, I agree with the majority only insofar as they modified Special Term's order to declare that The Home Insurance Company is not obligated to defend or indemnify plaintiffs.

However, I disagree with that portion of the majority's memorandum that purports to advise the Bar on the extent of the coverage afforded by "claims made" policies *(see,* majority mem, at 511), since, in my opinion, that obiter dictum may be misleading, is speculative, and is irrelevant to the facts in the instant case.

Accordingly, I concur in the result only.